UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

FREDERICK WEBSTER

v.

Case No.: 3:20-cv-00333-MMH-MCR

The FLORIDA DEPARTMENT OF
CORRECTIONS, an agency of the state of
Florida; CORIZON, LLC, an out of state
corporation registered and doing business
in Florida; and CENTURION OF
FLORIDA, LLC, an out of state corporation
registered and doing business in Florida,
_____/

## FREDERICK WEBSTER'S AMENDED COMPLAINT

### Preliminary Statement

1. This is an action for damages, alleging that Defendants, in violation of the
   Cruel and Unusual Punishments Clause of the Eighth Amendment, the
   Americans with Disabilities Act (ADA), and Section 504 of the Rehabilitation
   Act of 1973, deliberately deprived Plaintiff Frederick Webster of medically
   necessary treatment for hepatitis C, causing him great pain and permanent
   injury.

2. Jurisdiction is invoked pursuant to 28 U.S.C. § 1331 in that this is a civil action
   arising under the Constitution of the United States.

3.  Jurisdiction of this Court is invoked pursuant to 28 U.S.C. § 1343(a)(3) in that this action seeks to redress the deprivation, under color of state law, of rights secured to the Plaintiff by the Constitution and laws of the United States.

4.  Plaintiff's claims for relief are predicated, in part, upon 42 U.S.C. § 1983, which authorizes actions to redress the deprivation, under color of state law, of rights, privileges, and immunities secured by the Constitution and laws of the United States, and upon 42 U.S.C. § 1988, which authorizes the award of attorney's fees and costs to prevailing plaintiffs in actions brought pursuant to 42 U.S.C. § 1983.

5.  Plaintiff's claims for relief are also predicated on violations of Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 et seq., and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, as amended.

6.  Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and § 1391(c), as many of the events or omissions giving rise to the claims occurred in this judicial district and Defendants did substantial business in this judicial district.

7.  Plaintiff Webster is a citizen of the United States and a resident of Florida. Mr. Webster is incarcerated by the Florida Department of Corrections in Union Correctional Institution, Raiford, Florida.

8.  Defendant Florida Department of Corrections (FDC) is an agency of the State of Florida receiving federal funds to operate its agency. Defendant FDC is headquartered in Tallahassee, Florida.

9.  Defendant Corizon, LLC (Corizon), is an out-of-state corporation, registered and doing business in Florida. Defendant Corizon, from October 2012 until May 2016, contracted with the Florida Department of Corrections to provide health care services to people confined in FDC prisons including where Plaintiff was housed. Defendants Corizon and FDC were responsible for health care services for Plaintiff.

10. Defendant Centurion of Florida, LLC (Centurion), is an out-of-state corporation, registered and doing business in Florida. In April of 2016, Defendant Centurion contracted with the FDC to provide health care services to people confined in FDC prisons. From May of 2016 Defendants Centurion and FDC were responsible for health care services for Plaintiff.

11. The actions of the Defendants, as herein alleged, were performed under color of state law and constitute state action.

12. At all times relevant to this lawsuit, Defendant FDC had a nondelegable duty to provide constitutionally adequate healthcare services to its prisoners.

### The Hepatitis C Virus

13. Hepatitis C is a blood borne disease caused by the hepatitis C virus (HCV).

14. Chronic HCV is a serious medical need.

15. Liver inflammation caused by HCV can significantly impair liver function and damage its crucial role in digesting nutrients, filtering toxins from the blood, fighting infection, and conducting other metabolic processes in the body.

16. Liver inflammation can also cause fatigue, weakness, muscle wasting, skin rashes, and arthritis.

17. People with chronic HCV develop fibrosis of the liver, a process by which healthy liver tissue is replaced with scarring.

18. Liver scarring caused by HCV can lead to liver cancer.

19. When scar tissue begins to take over most of the liver, this extensive fibrosis is termed cirrhosis.

20. Cirrhosis causes additional painful complications, including widespread itching, kidney disease, jaundice, fluid retention with edema, internal bleeding, varices (enlarged veins that develop in the esophagus or intestines, which can burst), easy bruising, ascites (fluid accumulation in the legs and abdomen), encephalopathy (mental confusion and disorientation), lymph disorders, increased risk of infection, seizures, and extreme fatigue.

21. If they go untreated, complications from HCV can cause death, often from infection, bleeding, and fluid accumulation.

22. Starting in 2013, direct-acting antiviral (DAA) drugs became available for patients.

23. DAAs are oral medications with few side effects that cure HCV at rates of over 95%.

24. In response to the revolutionary DAA medications, the American Association for the Study of Liver Diseases (AASLD) and the Infectious Disease Society of America (IDSA) formed a panel of experts to conduct an extensive, evidence-based review of the testing, management, and treatment of HCV.

25. The results of that review have been published in a comprehensive document called the HCV Guidance, which is updated regularly and is available at www.hcvguidelines.org.

26. The Guidance sets forth the medical standard of care for the treatment of HCV, which is well-established in the medical community.

27. The AALSD/IDSA panel, through the HCV Guidance, in 2014 recommended treatment with DAA drugs for all persons with chronic HCV.

28. Since 2014, this has been the standard of care for the treatment of HCV, and it reflects the continuing medical research showing the safety, tolerability, efficacy, and dramatic benefits of the DAA drugs.

29. Moreover, since 2014, the HCV Guidance has prioritized DAA treatment for chronic HCV patients who also have HIV because of the increased risk to such patients.

## General Factual Allegations

30.  From late 2013, when DAAs were first available until October of 2017, the FDC and its medical contractors—Corizon and Centurion—failed to provide these lifesaving medications to thousands of prisoners with HCV, in contravention of the prevailing standard of care and in deliberate indifference to the serious medical needs of prisoners with HCV.

31. As a result of their refusal to provide DAAs to prisoners, over 100 prisoners died of untreated hepatitis C. Moreover, hundreds more suffered irreparable liver damage.

32. It wasn't until the FDC was sued in federal court that the FDC and its contractor Centurion began providing these medications to thousands of prisoners who needed it. The Court in that lawsuit found in a preliminary injunction order that FDC's practice of failing to treat prisoners with HCV amounted to deliberate indifference to their serious medical needs, in violation of the Eighth Amendment.

*The Denial of Care During Defendant Corizon's Contract*

33. High level Corizon officials responsible for medical policy in Florida prisons
    knew about DAAs when they were first available in 2013.

34. They also knew that the medical standard of care to treat chronic HCV was
    immediate treatment with DAAs.

35. They also knew that thousands of FDC prisoners had HCV and were not
    receiving DAAs, or any other treatment for it.

36. Yet, during their entire tenure in Florida, for three years, Corizon staff treated
    just five patients with DAAs.

37. Corizon had a policy, practice, and custom of refusing to provide treatment for
    chronic HCV.

38. Plaintiff Webster came into the custody of the FDC on September 17, 1986 and
    received a physical exam.

39. Mr. Webster has decompensated cirrhosis.

40. In 2014 medical tests including blood samples were taken by defendants and
    indicated Mr. Webster had decompensated cirrhosis.

41. Approximately every ninety days after the first test showing decompensated cirrhosis medical tests including blood samples were taken by defendants and indicated Mr. Webster had decompensated cirrhosis.

42. However, for nearly four years, Mr. Webster was denied HCV treatment by Defendants Corizon and FDC.

43. Defendant Corizon knew that Mr. Webster had chronic HCV, knew that patients with chronic HCV should be prioritized for DAA treatment, but denied Mr. Webster DAA treatment.

44. Mr. Webster filed numerous grievances and appeals, complaining about his HCV related symptoms and requesting treatment. They were all denied.

45. Mr. Webster was denied HCV treatment by Defendant Corizon despite being diagnosed with severe cirrhosis in September of 2014.

46. Mr. Webster was denied HCV treatment from September of 2014 until April of 2018, because Defendants Corizon and FDC had a policy, practice, and custom of not providing direct acting antivirals to patients with HCV, in part to save costs and to make larger profits.

47. FDC knew that Mr. Webster was being denied treatment, and of Corizon's policy and practice, yet failed to take any corrective action.

48. Because Mr. Webster did not receive HCV treatment from September of 2014

until April of 2018, he sustained serious damage to his health and an increased

risk of future health complications.

*Denial of Care During Defendant Centurion's Contract*

49. Centurion replaced Corizon as the FDC's contracted health care vendor in May

of 2016.

50. Centurion, and its high-level officials responsible for medical policy in Florida

prisons, were aware that thousands of FDC prisoners had untreated HCV.

51. Centurion, and its high-level officials responsible for medical policy in Florida

prisons, were also aware that the medical standard of care to treat chronic HCV

was DAAs.

52. Centurion, and its high-level officials responsible for medical policy in Florida

prisons, also were aware that prisoners with chronic HCV and HIV should be

prioritized for DAA treatment.

53. Yet, for a year and a half, from May of 2016 until September of 2017,

Centurion treated just six patients with DAAs.

54. Centurion had a policy, practice, and custom of refusing to provide treatment

for chronic HCV.

55. From May 2016, when Centurion took over Corizon's contract Centurion was responsible with FDC for Mr. Webster's medical care.

56. Centurion denied Mr. Webster DAA treatment from September of 2014 until April of 2018, because Defendants FDC and its new contractor Centurion continued the policy, practice, and custom of not providing DAAs to patients with HCV.

57. It wasn't until the FDC was sued in federal court that the FDC's contractor Centurion began providing DAA treatment to Mr. Webster.

58. And, indeed, after the lawsuit for injunctive relief was filed on May 11, 2017, Centurion delayed Mr. Webster's HCV treatment until April of 2018.

59. Mr. Webster filed numerous grievances and appeals, complaining about his HCV related symptoms and requesting treatment. They were all denied.

60. Mr. Webster was denied HCV treatment from September of 2014 until April of 2018, because Defendants Centurion and FDC had a policy, practice, and custom of not providing direct acting antivirals to patients with HCV, in part to save costs and to make larger profits.

61. FDC knew about the denial of treatment to Mr. Webster, and Centurion's policy and practice, yet failed to take any corrective action.

62. Because Mr. Webster did not receive HCV treatment from September of 2014 until April of 2018, he sustained serious damage to his health and has an increased risk of future health complications.

## **The Harm to Mr. Webster**

63. Defendants' delay of DAA treatment for over three years has caused irreparable damage to Mr. Webster's liver.

64. Because of the delay of HCV treatment, Mr. Webster experiences fatigue, mild depression, joint pain, brain fog, swelling and pain near liver, irritable bowel movement, and sleep disorder.

65. Mr. Webster's lab tests and medical records indicate that he has cirrhosis, which has worsened due to this delay in treatment.

66. Also, his liver condition is getting worse.

67. Defendants' deliberate indifference to Mr. Webster's serious medical needs has caused his quality of life to substantially deteriorate, has caused permanent liver damage.

68. Mr. Webster is also at heightened risk for developing further symptoms including further advanced liver failure, liver cancer, and death.

69. The willful and deliberate acts of Defendants FDC, Corizon, and Centurion, in withholding HCV treatment for Mr. Webster, have caused him great physical pain and mental discomfort in his daily activities of living. It has shortened his lifespan and has caused him severe emotional pain and suffering.

**Claims for Relief**

**COUNT I**
**Eighth Amendment Claim Against Defendant Corizon via 42 U.S.C. § 1983**

70. Plaintiff incorporates and re-alleges each paragraph preceding the Claims for Relief section as if fully set forth herein.

71. Although persons are sent to the Florida Department of Corrections for punishment for committing a crime, Defendant Corizon, in refusing HCV treatment for Mr. Webster, imposed punishment far in excess of that authorized by law, contrary to the Cruel and Unusual Punishments Clause of the Eighth and Fourteenth Amendments.

72. Refusing Mr. Webster lifesaving treatment and allowing his liver to deteriorate to severe cirrhosis violated all standards of decency, contrary to the Cruel and Unusual Punishments Clause of the Eighth Amendment, applicable to the states through the Fourteenth Amendment.

73. Defendant knew that Mr. Webster suffered from a serious medical need, and knew that failing to treat him subjected him to a substantial risk of serious harm.

74. Defendant's refusal to treat Plaintiff Webster constituted deliberate indifference to Plaintiff's serious medical needs, in violation of the Eighth and Fourteenth Amendments.

75. Defendant's intentional failure to provide Plaintiff Webster with necessary treatment and instead merely monitoring his deteriorating liver was medical care so cursory as to amount to no medical care at all.

76. Defendant provided Mr. Webster with grossly inadequate care.

77. As a direct and proximate cause of Defendant's policy, practice, and custom, and deliberate indifference to Plaintiffs' serious medical needs, Plaintiff has suffered, and will to continue to suffer from, harm.

## COUNT II
## Eighth Amendment Claim Against Defendant Centurion via 42 U.S.C. § 1983

78. Plaintiff incorporates and re-alleges each paragraph preceding the Claims for Relief section as if fully set forth herein.

79. Although persons are sent to the Florida Department of Corrections for punishment for committing a crime, Defendant Centurion, in refusing HCV

treatment for Mr. Webster, imposed punishment far in excess of that authorized by law, contrary to the Cruel and Unusual Punishments Clause of the Eighth and Fourteenth Amendments.

80. Refusing Mr. Webster lifesaving treatment and allowing his liver to deteriorate to severe cirrhosis violated all standards of decency, contrary to the Cruel and Unusual Punishments Clause of the Eighth Amendment, applicable to the states through the Fourteenth Amendment.

81. Defendant knew that Mr. Webster suffered from a serious medical need, and knew that failing to treat him subjected him to a substantial risk of serious harm.

82. Defendant's refusal to treat Plaintiff Webster constituted deliberate indifference to Plaintiff's serious medical needs, in violation of the Eighth and Fourteenth Amendments.

83. Defendant's intentional failure to provide Plaintiff Webster with necessary treatment and instead merely monitoring his deteriorating liver was medical care so cursory as to amount to no medical care at all.

84. Defendant provided Mr. Webster with grossly inadequate care.

85. As a direct and proximate cause of Defendant's policy, practice, and custom, and deliberate indifference to Plaintiffs' serious medical needs, Plaintiff has suffered, and will to continue to suffer from, harm.

## COUNT III
### Americans with Disabilities Act Claim Against Defendant FDC

86. Plaintiff incorporates and re-alleges all paragraphs preceding the Claims for Relief section as if fully set forth herein.

87. This count is brought under Title II of the Americans with Disabilities Act (ADA), 42. U.S.C. § 12131 – 12134, and its implementing regulations.

88. Subtitle A of Title II of the Americans with Disabilities Act (ADA) prohibits public entities from discriminating against persons with disabilities in their programs, services, and activities. 42. U.S.C. §§ 12131 – 12134. Regulations implementing subtitle A are codified at 28 C.F.R. part 35.

89. Defendant FDC is a "public entity" within the meaning of 42 U.S.C. § 12131(1)(A) and 28 C.F.R. §§ 35.104 & 35.130(b)(1).

90. Plaintiff Webster is a "qualified individual with a disability" within the meaning of 42 U.S.C. § 12102(2) and 28 C.F.R. § 35.104, because chronic HCV is a physiological disorder or condition that affects one or more body systems, including but not limited to the digestive, gastrointestinal, immune,

circulatory, cardiovascular, and hemic systems, and is therefore a physical

impairment.

91. Mr. Webster's chronic HCV and permanent liver damage substantially limits

one of or more of his major life activities, including caring for oneself,

performing manual tasks, walking, bending, lifting, thinking, concentrating,

working, eating, and other digestive functions. 42 U.S.C. § 12102(2); 28

C.F.R. § 35.108(c).

92. Plaintiff has a record of having an impairment that substantially limits one or

more major life activity, as he has a history of such an impairment. 42 U.S.C. §

12102(1)(B); 28 C.F.R. § 35.108(a)(1)(ii) & (e).

93. Defendant FDC kept a record of Plaintiff Webster's impairment due to HCV.

42 U.S.C. § 12102(1)(B); 28 C.F.R. § 35.108(a)(1)(ii) & (e).

94. Plaintiff is regarded by FDC as having an impairment that substantially limits

one or more major life activity, as FDC perceived him as having such an

impairment. 42 U.S.C. § 12102(1)(C) & (3); 28 C.F.R. § 35.108(a)(1)(iii) &

(f). Defendant FDC has subjected Plaintiff to a prohibited action because of an

actual or perceived physical impairment.

95. Plaintiff was a qualified individual with a disability because he met the essential eligibility requirements for the receipt of services or the participation in programs or activities provided by Defendant FDC, including but not limited to medical services. 42 U.S.C. § 12131(2); 28 C.F.R. § 35.104.

96. By withholding medical treatment from those with HCV, but not withholding medical treatment from those with other disabilities or those who are not disabled, Defendant FDC excluded Plaintiff from participation in, and denied him the benefits of, FDC services, programs, and activities (such as medical services) by reason of his disability. 42 U.S.C. § 12132; 28 C.F.R. § 35.130(a).

97. Defendant FDC failed to provide Plaintiff with equal access to and enjoyment of effective medical services. 28 C.F.R. § 35.130(b)(1).

98. Defendant FDC utilized criteria or methods of administration that had the effect of subjecting Plaintiff to discrimination and that defeated or substantially impaired accomplishment of the objectives of medical treatment for HCV. 28 C.F.R. § 35.130(b)(3).

99. DAAs were readily available to Defendant FDC during this time period and yet it categorically refused to provide Plaintiff with treatment that the medical community deems essential.

100. Defendant FDC knew about the violations described herein but failed to correct them, thereby exhibiting deliberate indifference to the rights of Plaintiff.

101. Moreover, Defendant FDC owed Plaintiff a non-delegable duty to ensure that his wellbeing would not be compromised as a result of discrimination based on his disability. Accordingly, Defendant FDC is vicariously liable for the actions of any and all persons or entities Defendant FDC designated to care for Plaintiff.

102. As a direct and proximate cause of Defendant FDC's actions and omissions, Plaintiff has suffered harm and violation of his ADA rights.

## COUNT IV
## Rehabilitation Act Claim Against Defendant FDC

103. Plaintiff incorporates and re-alleges all paragraph preceding the Claims for Relief section as if fully set forth herein.

104. This count is brought under Section 504 of the Rehabilitation Act (RA), 29 U.S.C. § 701, *et seq*. and 29 U.S.C. § 791–794, *et seq*., and its implementing regulations.

105. Defendant FDC is a program or activity receiving federal financial assistance within the meaning of 29 U.S.C. § 794.

106. Defendant FDC excluded Plaintiff—a qualified individual with a disability—

from participation in, and denied him the benefits of, programs or activities

solely by reason of his disability. 29 U.S.C. § 794(a); 29 U.S.C. § 705(20); 28

C.F.R. § 42.503(a).

107. Defendant FDC subjected Plaintiff—a qualified individual with a disability—

to discrimination. 29 U.S.C. § 794(a).

108. Defendant FDC denied Plaintiff—a qualified individual with a disability—the

opportunity accorded to others to participate in programs and activities. 28

C.F.R. § 42.503(b)(1).

109. Defendant FDC utilized criteria or methods of administration that either

purposely or in effect discriminate on the basis of disability, and defeat or

substantially impair accomplishment of the objectives of FDC's programs or

activities with respect to persons with disabilities. 28 C.F.R. § 42.503(b)(3).

110. Defendant FDC knew about the violations described herein but failed to

correct them, thereby exhibiting deliberate indifference to the rights of

Plaintiff.

111. As a direct and proximate cause of Defendant FDC's exclusion and

discrimination, Plaintiff has suffered and continues to suffer from harm and

violation of his RA rights.

**<u>Prayer For Relief</u>**

WHEREFORE, the Plaintiff, Frederick Webster, demands judgment against all

Defendants and requests the following relief:

A.  A declaration that Defendants Corizon and Centurion have violated Plaintiff

B.  Webster's Eighth Amendment rights and that Defendant FDC has violated Mr.

Webster's rights under the ADA and Rehabilitation Act;

B.  Compensatory damages against all Defendants;

C.  Punitive damages against Defendants Corizon and Centurion;

D.  All pre and post judgment interest allowable under law;

E.  Attorneys' fees, costs, and expenses of litigation incurred under 42 U.S.C. §

12205, 29 U.S.C. § 794a, and 42 U.S.C. § 1988; and

F.  Such other relief that may be appropriate.

**Jury Demand**

Plaintiff demands trial by jury on all counts alleged above.

DATED: December 9, 2020.

Respectfully submitted,

s/ *Michael Stanski*
Michael Stanski
Florida Bar No. 109276
3955 Riveside Ave
Jacksonville, Florida 32205
Telephone: 904-370-3483
E-Mail: michael@stanskilaw.com
Attorney for Frederick Webster