# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# JACKSONVILLE DIVISION

FREDERICK WEBSTER,

      Plaintiff,

v.                                                    Case No.  3:20-cv-333-MMH-MCR

THE FLORIDA DEPARTMENT
OF CORRECTIONS, CORIZON,
LLC, and CENTURION OF
FLORIDA, LLC,

      Defendants.

_____

# ORDER

## I. Status

Plaintiff, Frederick Webster, an inmate in the custody of the Florida Department of Corrections (FDOC), initiated this action by filing a pro se Civil Rights Complaint (Doc. 1) under 42 U.S.C. § 1983. He is proceeding in forma pauperis on a Second Amended Complaint (Doc. 13; SAC), filed with help from court appointed counsel.[1] As Defendants, Webster sues the FDOC; Corizon of Florida, LLC (Corizon); and Centurion of Florida, LLC (Centurion). SAC at 2-

---

[1] Soon after Webster initiated this action, the Court sua sponte appointed counsel to represent him. Doc. 5. After counsel filed the SAC on Webster's behalf, the Court granted counsel's unopposed motion to withdraw. Doc. 48. Webster is now proceeding pro se.

3. Webster, who alleges he suffers from Hepatitis C virus (HCV), argues that Defendants Corizon and Centurion violated his Eighth Amendment right to be free from cruel and unusual punishment and that Defendant FDOC violated Title II of the Americans with Disabilities Act (ADA) and Section 504 of the Rehabilitation Act (RA) when Defendants refused to provide Webster with lifesaving HCV treatment because of a cost-saving policy. Id. at 12-21. As relief, Webster seeks declaratory relief, compensatory and punitive damages, as well as attorney's fees and costs. Id. at 20.

Before the Court are Defendants Corizon's and Centurion's Motions to Dismiss.[2] See Defendant Corizon, LLC's Motion to Dismiss or for Summary Judgment (Doc. 32; Corizon Motion), with Exhibit (Doc. 31-1); Centurion of Florida, LLC's Motion to Dismiss and Incorporated Memorandum of Law (Doc. 36; Centurion Motion), with Exhibit (Doc. 36-1). Webster filed responses. See Plaintiff's Motion in Opposition to Defendant Corizon, LLC Motion to Dismiss or Summary Judgment (Doc. 54), with Exhibit (Doc. 55-1); Plaintiff's Motion in Opposition to Defendants' Centurion, LLC, Motion to Dismiss Plaintiff's Second Amended Complaint (Doc. 56), with Exhibit (Doc. 57-1). Corizon replied. See Defendant Corizon, LLC's Reply Memorandum in Support of its

---

[2] Defendant FDOC filed an Answer in response to the SAC. See Doc. 43.

Motion to Dismiss or for Summary Judgment (Doc. 59). The Motions are ripe for review.

## II. Webster's Allegations

In his SAC, Webster raises four claims for relief. See generally SAC. Because the motions addressed in this Order only pertain to Webster's allegations against Corizon and Centurion, the Court limits its summary to the allegations involving these Defendants.

Webster alleges that he entered FDOC custody in 1986. Id. at 7. Although it is unclear when Webster received his HCV diagnosis, he contends that when he entered FDOC custody, officials conducted a physical exam and determined Webster suffered from decompensated cirrhosis stemming from chronic HCV. Id. at 7-8. He maintains that chronic HCV is a serious medical need that can cause, inter alia, liver inflammation, liver fibrosis, cirrhosis, and possible death. Id. at 3-4. Webster asserts that in 2013, a new class of drugs known as direct-acting antivirals (DAAs) became available to HCV patients. Id. at 5. He argues that DAAs are oral medications with few side effects that cure HCV at a rate over 95%. Id. According to Webster, in 2014, the American Association for the Study of Liver Diseases and the Infectious Disease Society of America recommended DAA treatment for all persons with chronic HCV. Id. And since 2014, DAA treatment "has been the standard of care for the treatment of HCV . . . ." Id. Webster contends that despite DAAs becoming

available in 2013, the FDOC "and its medical contractors – Corizon and Centurion – failed to provide these lifesaving medications to thousands of prisoners with HCV, in contravention of the prevailing standard of care and in deliberate indifference to the serious medical needs of prisoners with HCV." Id. at 6.

Webster alleges that Corizon contracted with the FDOC to provide health care services to prisoners, like Webster, in FDOC custody from October 2012 until May 2016. Id. at 2-3. Webster argues that Corizon officials knew about DAAs when the medication became available in 2013 and knew DAA treatment was the medical standard of care and treatment for chronic HCV. Id. at 7. He also contends that Corizon knew that thousands of FDOC prisoners suffered from HCV, but it refused to provide DAAs or any other treatment for the virus. Id. Webster asserts that in 2014, Corizon took Webster's blood samples confirming he had decompensated cirrhosis. Id. at 7. According to Webster, every ninety days, Webster underwent further medical testing indicating his decompensated cirrhosis had become severe. Id. at 7-8. From September 2014 until May 2016, however, Corizon refused to provide him with DAA treatment despite knowing that his condition prioritized him for such treatment. Id. at 8. According to Webster, Corizon denied him HCV treatment because Corizon and the FDOC "had a policy, practice, and custom of not providing [DAAs] to patients with HCV, in part to save costs and to make

larger profits." Id. at 9. He argues that because of Corizon's practice, policy, and custom of refusing to treat Plaintiff with DAAs, "he sustained serious damage to his health and an increased risk of future health complication." Id. at 9.

Webster also contends that Centurion replaced Corizon in April 2016 and began providing health care services to prisoners, like Webster, in FDOC custody in May 2016. Id. at 3. According to Webster, Centurion knew about Webster's need for DAAs because Webster filed several grievances and appeals complaining about his HCV related symptoms and requesting treatment. Id. at 10. He contends that Centurion continued to deny him DAA treatment despite knowing "that the medical standard of care to treat chronic HCV was DAAs" and that "prisoners with chronic HCV and HIV should be prioritized for DAA treatment."[3] Id. Webster asserts that Centurion continued to adhere to the "policy, practice, and custom of refusing to provide treatment for chronic HCV." Id. According to Webster, Centurion did not begin providing DAA treatment to Webster until after other prisoners sought injunctive relief against the FDOC in May 2017. Id. at 10. Still, Webster contends Centurion continued to delay Webster's HCV treatment until April 2018. Id. Webster alleges that because of Centurion's delay in DAA treatment, "he sustained

---

[3] It is unclear if Webster also suffers from HIV.

serious damage to his health and has an increased risk of future health complications." <u>Id.</u> at 11.

Based on these facts, Webster alleges that Corizon and Centurion's conduct amounts to deliberate indifference to his serious medical needs in violation of the Eighth Amendment. <u>Id.</u> at 11. He asserts that Corizon and Centurion "knew that [] Webster suffered from a serious medical need, and knew that failing to treat him subjected him to a substantial risk of serious harm." <u>Id.</u> at 13. He also contends that "[a]s a direct and proximate cause of Defendants['] policy, practice, and custom, and deliberate indifference to [Webster's] serious medical needs, [Webster] has suffered and will [] continue to suffer from[] harm." <u>Id.</u> at 13, 15. He asserts that he "experiences fatigue, mild depression, joint pain, brain fog, swelling and pain near [his] liver, irritable bowel movement, and sleep disorder." <u>Id.</u> at 11. Webster maintains that the delay in treatment worsened his cirrhosis, and he is now "at heightened risk for developing further symptoms including further advanced liver failure, liver cancer, and death." <u>Id.</u>

## III. Motion to Dismiss Standard

In ruling on a motion to dismiss, the Court must accept the factual allegations set forth in the complaint as true. <u>See</u> <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009). In addition, all reasonable inferences should be drawn in favor of the plaintiff. <u>See</u> <u>Randall v. Scott</u>, 610 F.3d 701, 705 (11th Cir. 2010).

6

Nonetheless, the plaintiff must still meet some minimal pleading requirements. Jackson v. Bellsouth Telecomm., 372 F.3d 1250, 1262-63 (11th Cir. 2004) (citations omitted). Indeed, while "[s]pecific facts are not necessary[,]" the complaint should "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (per curiam) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Further, the plaintiff must allege "enough facts to state a claim that is plausible on its face." Twombly, 550 U.S. at 570. "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 556).

A "plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" Twombly, 550 U.S. at 555 (internal quotations omitted); see also Jackson, 372 F.3d at 1262 (explaining that "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal") (internal citation and quotations omitted). Indeed, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions[,]" which simply "are not entitled to [an] assumption of truth." See Iqbal, 556 U.S. at 678, 680. Thus, in ruling on a motion to dismiss, the Court must determine

whether the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face[.]'" <u>Id.</u> at 678 (quoting <u>Twombly</u>, 550 U.S. at 570).

## IV. Corizon Motion

Corizon requests dismissal of Webster's claims against it because he initiated this action after the expiration of the four-year statute of limitations. Corizon Motion at 6-8. Corizon maintains that as early as April 2015, Webster knew or should have known "of an injury and the person or entity to blame for the injury." <u>Id.</u> at 8. In support of this assertion, Corizon states that on April 1, 2015, Webster began filing grievances requesting medical to provide DAAs to treat his HCV and continued to request DAA treatment until he "was cured in April 2018."[4] <u>Id.</u> at 2. Corizon argues, however, that Webster did not file this action until April 1, 2020, "exactly 5 years after the [first] grievance was submitted," and one year after the expiration of the four-year statute of limitations. <u>Id.</u> at 8.

In his Response, Webster does not dispute that the applicable statute of limitations is four years. Doc. 54 at 8. Instead, he argues that he repeatedly requested medical treatment for his HCV during his incarceration and

---

[4] Although Corizon cites the SAC in support of its statement that Webster was cured in April 2018, the SAC is devoid of a specific allegation that Webster has been cured. <u>See generally</u> SAC.

Defendants' continued refusal constituted a "continuous cause of action which continued until April of 2018, when" Webster finally received treatment. Id. at 8-9.

In reply, Corizon argues that the continuing violation doctrine applies only when a reasonably prudent plaintiff could not have determined that a violation occurred. Doc. 59 at 2. According to Corizon, however, in Webster's April 2015 grievance, Webster "actually concluded that a violation of his rights occurred," and thus he cannot rely on the continuing violation doctrine to save this time-barred action. Id. (citing Doc. 31-1).

Actions "brought pursuant to 42 U.S.C. § 1983 are subject to the statute of limitations period governing personal injury actions in the state where the action is brought." Wellons v. Comm'r, Ga. Dep't of Corr., 754 F.3d 1260, 1263 (11th Cir. 2014) (citation omitted). In Florida, "[t]he applicable statute of limitations in a § 1983 lawsuit is the four-year Florida state statute of limitations for personal injuries." Omar v. Lindsey, 334 F.3d 1246, 1251 (11th Cir. 2003) (per curiam) (citations omitted); see Ealy v. GEO Grp., Inc., 667 F. App'x 739, 740 (11th Cir. 2016) ("This Court has on several occasions applied the four-year residual limitations period under Florida's personal injury statute, Florida Statutes § 95.11(3)(p), to 42 U.S.C. § 1983 claims."). Federal law determines when the statute of limitations begins to run. Rozar v. Mullis, 85 F.3d 556, 561 (11th Cir. 1996). Under federal law, the statute of limitations

begins to run when "the plaintiffs know or should know (1) that they have suffered the injury that forms the basis of their complaint and (2) who has inflicted the injury." Chappell v. Rich, 340 F.3d 1279, 1283 (11th Cir. 2003).

An exception to the general accrual rule is the "continuing violation" doctrine. "Under the continuing violation doctrine, the statute of limitations is tolled for a claim that otherwise would be time-barred where the violation giving rise to the claim continues to occur within the limitations period." Nat'l Parks & Conservation Ass'n, Inc. v. Tenn. Valley Auth., 502 F.3d 1316, 1322 (11th Cir. 2007). In other words, the doctrine "permits a plaintiff to sue on an otherwise time-barred claim when additional violations of the law occur within the statutory period." Robinson v. United States, 327 F. App'x 816, 818 (11th Cir. 2007). "When the violation alleged involves a continuing injury, the cause of action accrues, and the limitation period begins to run, at the time the unlawful conduct ceases." Id. Likewise, "an 'allegation of a failure to provide needed and requested medical attention constitutes a continuing tort, which does not accrue until the date medical attention is provided." Baker v. Sanford, 484 F. App'x 291, 293 (11th Cir. 2012)[5] (quoting Lavellee v. Listi, 611 F.2d

---

[5] "Although an unpublished opinion is not binding . . . , it is persuasive authority." United States v. Futrell, 209 F.3d 1286, 1289 (11th Cir. 2000) (per curiam); see generally Fed. R. App. P. 32.1; 11th Cir. R. 36-2 ("Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority.").

1129, 1132 (5th Cir. 1980)). "The critical distinction in the continuing violation analysis . . . is whether the plaintiff [] complain[s] of the present consequence of a one-time violation, which does not extend the limitations period, or the continuation of that violation into the present, which does." <u>Knight v. Columbus, Ga.</u>, 19 F.3d 579, 580-81 (11th Cir. 1994). "Where a continuing violation is found, the plaintiff[ ] can recover for any violations for which the statute of limitations has not expired." <u>Id.</u> at 581.

In his SAC, Webster alleges that in September 2014, he was diagnosed with severe cirrhosis stemming from his chronic HCV. SAC at 8. He asserts that Corizon knew that he was suffering from HCV and he filed several grievances and appeals complaining about his HCV related symptoms and requesting treatment. <u>Id.</u> According to Webster, Corizon repeatedly denied his requests from 2014 until its FDOC contract ended in 2016 and afterward Centurion continued to deny his requests. He asserts he did not receive treatment until April 2018. Webster initiated this action on March 31, 2020. <u>See</u> Doc. 1. On this record, Webster properly alleges a continuous injury during the statute of limitations period. Thus, Corizon's Motion is due to be denied.

## V. Centurion Motion

Centurion requests dismissal of Webster's claims against it because (1) Webster's action is barred by the three-strikes rule under 28 U.S.C. § 1915(g); (2) Webster failed to exhaust his administrative remedies as to his claims

against Centurion; and (3) Webster failed to state a plausible Eighth Amendment claim against it. See generally Centurion Motion. In his Response, Webster urges the Court to deny Centurion's Motion and maintains this action is not barred by § 1915(g) because he has shown he is under imminent danger of a serious physical injury. Doc. 56 at 5. He also asserts that he exhausted his available administrative remedies before filing suit and maintains that he states a plausible deliberate indifference claim under the Eighth Amendment. Id. at 8-9.

### (1) Three Strikes Provision of 28 U.S.C. § 1915

Centurion requests that the Court reconsider Webster's pauper status and dismiss this case without prejudice to Webster refiling his claims after paying the filing fee. Centurion Motion at 7-10. It contends Webster is a three-strikes litigant who was not in imminent danger of serious physical injury when he filed this case because, according to Centurion, Webster received DAA treatment in 2018 and "there is no allegation that Webster still suffers from HCV – because he does not." Id. at 9.

In determining whether a three-strikes litigant, such as Webster, has sufficiently alleged "imminent danger," a court considers the facts in the complaint, construing such facts liberally and accepting them as true. See Brown v. Johnson, 387 F.3d 1344, 1350 (11th Cir. 2004); see also Barber v. Krepp, 680 F. App'x 819, 820 (11th Cir. 2017) ("Whether a prisoner is entitled

to proceed in forma pauperis under § 1915(g) must be determined based upon the complaint, which we must construe liberally [because it was filed pro se] and the allegations of which we must accept as true."). Applying those principles, the Eleventh Circuit has held that allegations indicating a "'lack of treatment' for hepatitis C, and . . . that this lack of treatment caused cirrhosis to begin, . . . fall[] within the imminent-danger exception to the three strikes provision." Mitchell v. Nobles, 873 F.3d 869, 874 (11th Cir. 2017).

When Webster initiated this case and moved to proceed in forma pauperis, he alleged in his Complaint that "he faces imminent danger of death resulting from Defendant[s'] . . . deliberate indifference to [Webster's] serious medical needs for treatment of [his] hepatitis C infection which has result[ed] in [him] having decompensated cirrhosis of his liver; [and] will eventually result in cancer and his death . . . ." Doc. 1 at 5; see also Doc. 2. The Court granted Webster's request to proceed as a pauper, recognizing his status as a three-strikes litigant, but finding Webster's allegations in his Complaint, taken as true, warrant application of the imminent danger exception to dismissal. See Doc. 3 at 1 n.1. The Court declines to reconsider the threshold procedural question of Webster's pauper status. As such, Centurion's Motion is due to be denied as to this issue.

(2) Exhaustion

Centurion also requests dismissal of Webster's claims against it because it believes Webster failed to exhaust his administrative remedies before filing suit. See Centurion Motion at 10-13. Centurion argues Webster filed two sets of grievances "arguably related to the treatment of his HCV condition, but neither of which pertain to Centurion"; and it contends it could not have "addressed either [set] of Webster's grievances when Centurion was not responsible for Webster's care during the period of time relevant to his grievance complaints." Id. at 11-13. According to Centurion, in April 2015, Webster began filing his first series of grievances, but because Centurion did not start providing medical services to FDOC inmates until May 2016, those 2015 grievances could not exhaust Webster's claims against Centurion. Id. at 11. Centurion contends Webster then filed a second set of grievances in 2019, alleging "the medical department" procrastinated in treating his HCV "until [his] liver reached the point of cirrhosis." Id. at 12. According to Centurion, Webster's 2019 grievances could not exhaust his administrative remedies because "there is nothing more Centurion could have done to remedy the delayed treatment of Webster's HCV in 2019 because Centurion had already treated Webster with DAAs a year before." Id. at 13.

Webster asserts he exhausted his claim against Centurion because he completed all necessary steps of the FDOC's grievance procedure, and his

14

grievances adequately addressed Centurion's delay in providing medical treatment. Doc. 56 at 7-8. He suggests that he was not required to specifically name Centurion within his grievances and while he ultimately received treatment for his HCV, his grievances addressed how the delayed treatment failed to fully correct the damage he sustained and continues to suffer. Id. In support of his argument, Webster provides copies of the medical grievances and appeals he submitted in 2015 and 2019. See generally Doc. 57-1. Relying on these grievances, Webster argues he fully exhausted his claims against Centurion, indicating his grievances filed during Corizon's contract and after his DAA treatment "clearly relate[] back" to an ongoing delay in treatment in which Centurion also participated. Doc. 56 at 8.

The Prison Litigation Reform Act (PLRA) requires that Webster exhaust his available administrative remedies before pursuing a § 1983 claim about prison conditions. See 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under section 1983 . . . until such administrative remedies as are available are exhausted."); see also Woodford v. Ngo, 548 U.S. 81, 92-93 (2006) (noting that a prisoner must exhaust administrative remedies before challenging the conditions of confinement, and concluding that the PLRA demands "proper exhaustion"). But Webster need not "specially plead or demonstrate exhaustion in [his] complaint[]." See Jones v. Bock, 549 U.S. 199,

15

216 (2007). Instead, the United States Supreme Court has recognized that "failure to exhaust is an affirmative defense under the PLRA[.]" Id.

Importantly, exhaustion of available administrative remedies is "a precondition to an adjudication on the merits." Bryant v. Rich, 530 F.3d 1368, 1374 (11th Cir. 2008). See also Jones, 549 U.S. at 211. The Supreme Court has instructed that while "the PLRA exhaustion requirement is not jurisdictional[,]" Woodford, 548 U.S. at 101, "exhaustion is mandatory . . . and unexhausted claims cannot be brought," Pavao v. Sims, 679 F. App'x 819, 823 (11th Cir. 2017) (per curiam) (citing Jones, 549 U.S. at 211). Not only is there a recognized exhaustion requirement, "the PLRA . . . requires proper exhaustion" as set forth in applicable administrative rules and policies of the institution. Woodford, 548 U.S. at 93.

> Because exhaustion requirements are designed to deal with parties who do not want to exhaust, administrative law creates an incentive for these parties to do what they would otherwise prefer not to do, namely, to give the agency a fair and full opportunity to adjudicate their claims. Administrative law does this by requiring proper exhaustion of administrative remedies, which "means using all steps that the agency holds out, and doing so properly (so that the agency addresses the issues on the merits)."

Id. at 90 (citation omitted). Indeed, "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules[.]" Id.

16

Failure to exhaust administrative remedies is an affirmative defense. As such, Centurion bears "the burden of proving that [Webster] has failed to exhaust his available administrative remedies." Turner v. Burnside, 541 F.3d 1077, 1082 (11th Cir. 2008). The Eleventh Circuit has articulated a two-step process that the Court must employ when examining the issue of exhaustion of administrative remedies.

> In Turner v. Burnside we established a two-step process for resolving motions to dismiss prisoner lawsuits for failure to exhaust. 541 F.3d at 1082. First, district courts look to the factual allegations in the motion to dismiss and those in the prisoner's response and accept the prisoner's view of the facts as true. The court should dismiss if the facts as stated by the prisoner show a failure to exhaust. Id. Second, if dismissal is not warranted on the prisoner's view of the facts, the court makes specific findings to resolve disputes of fact, and should dismiss if, based on those findings, defendants have shown a failure to exhaust. Id. at 1082–83; see also id. at 1082 (explaining that defendants bear the burden of showing a failure to exhaust).

Whatley v. Warden, Ware State Prison, 802 F.3d 1205, 1209 (11th Cir. 2015).

State law "determines what steps are required to exhaust." Dimanche v. Brown, 783 F.3d 1204, 1207 (11th Cir. 2015); see also Jones, 549 U.S. at 218 (stating that "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion"). The FDOC provides inmates with a three-step grievance process for exhausting administrative remedies. As the Eleventh Circuit has described it:

> The grievance procedure applicable to Florida prisoners is set out in § 33-103 of the Florida Administrative Code. Section 33-103 contemplates a three-step sequential grievance procedure: (1) informal grievance; (2) formal grievance; and then (3) administrative appeal. <u>Dimanche</u>, 783 F.3d at 1211. Informal grievances are handled by the staff member responsible for the particular area of the problem at the institution; formal grievances are handled by the warden of the institution; and administrative appeals are handled by the Office of the Secretary of the FDOC. <u>See</u> Fla. Admin. Code. §§ 33-103.005–103.007. To exhaust these remedies, prisoners ordinarily must complete these steps in order and within the time limits set forth in § 33-103.011, and must either receive a response or wait a certain period of time before proceeding to the next step. <u>See</u> <u>id.</u> § 33-103.011(4).

<u>Pavao</u>, 679 F. App'x at 824. However, the ordinary three-step procedure need not apply in all instances. A prisoner may skip the informal grievance step and immediately file a formal grievance for issues pertaining to various things, including "medical grievances" or "a formal grievance of a medical nature." Fla. Admin. Code r. 33-103.005(1); Fla. Admin. Code r. 33-103.008. If a prisoner is permitted to bypass the informal grievance step, he must file the formal grievance with the warden within 15 days from the date on which the incident or action being grieved occurred. Fla. Admin. Code r. 33-103.011(1)(b). A response must be provided to the inmate within 20 days of receipt of the formal grievance. Fla. Admin. Code r. 33-103.006(6). "If the inmate is unsatisfied with the resolution of a formal grievance, he may appeal the grievance to the Office

18

of the Secretary using Form DC1-303 (same form as a formal grievance)." <u>Jenkins v. Sloan</u>, 826 F. App'x 833, 835 (11th Cir. 2020) (citing Fla. Admin. Code Ann. R. 33-103.007). The grievance appeal to the Office of the Secretary must be received within 15 days from the date the response to the formal grievance is returned to the inmate. Fla. Admin. Code r. 33-103.11(c).

Here, Centurion does not dispute that Webster completed the FDOC's grievance procedure in either 2015 or 2019. Instead, Centurion maintains it either was not yet providing medical services to FDOC inmates when Webster filed the 2015 grievances or Webster had already received the requested DAA treatment a year before he filed his 2019 grievances, and thus it could not have resolved any alleged constitutional injury for which the 2019 grievances aimed to correct. Webster appears to assert that his 2019 grievances adequately exhausted his administrative remedies because he completed all steps in the FDOC's grievance procedure for grievances of a medical nature and the grievances addressed Centurion's delay in providing HCV treatment. Doc. 56 at 8 (citing 33-103.005(1)). The Court finds that Webster's allegations, taken as true, preclude dismissal at the first step of <u>Turner</u>. Thus, the Court will proceed to <u>Turner</u>'s second step and make specific findings to resolve the disputed factual issues related to exhaustion. In doing so, the Court need only review Webster's 2019 administrative grievances to resolve the factual issues in dispute.

The record evidence shows that on June 5, 2019, Webster submitted to the warden a formal grievance (log # 1906-213-017), stating the following:

> This is a formal grievance of medical nature in which inmate Frederick Webster . . . aggrieve the medical department for their procrastinating to provide me medical treatment for my infection hepatitis-c until my liver has reached the point of liver cirrhosis. I now continue to experience pain in my liver.

Doc. 57-1 at 1. The assistant warden denied the formal grievance, explaining the following:

> Log # 1906-213-017
>
> . . .
>
> Your request for Administrative Remedy or Appeal has been received, reviewed and evaluated.
> Reviewed records indicate that there is an ultrasound dated May 2, 2019, that states that your liver is normal in appearance. You were just seen on May 25, 2019, and had the opportunity to speak with the doctor, concerning your medical issues. Your chart also notes that you completed Epclusa in June of 2018.
>
> You are being treated in accordance with FDC policy and procedure.
>
> Based on the above information, your grievance is denied.
>
> . . . .

Id. at 2. Webster submitted an appeal (log # 19-6-25650) with the Secretary on July 5, 2019, stating the following:

> This is an appeal of the formal grievance log #
> 1906-213-017, in which inmate Frederick Webster []
> complaint of the inadequate medical treatment given
> him for his hepatitis-c infection which has resulted in
> irreversible damage to his liver to wit cirrhosis.
> Primarily, Webst[er] complain[s] that medical staff at
> Union Correctional has intentionally procrastinated in
> providing Webster with any form of medical treatment
> to him for his hepatitis infection until his liver
> commenced cirrhosis. . . .
>
> The response given at the intuitional level does
> not deny Webster's claim of delay for medical
> treatment nor does the response address any of
> Webster's concerns . . . . Thus, Webster request[s]
> administrative review of the medical department['s]
> failure to provide Webster adequate medical
> treatment in any form for his hepatitis infection before
> he got cirrhosis of the liver. Webster will also note in
> this appeal that liver cirrhosis is not detectable via
> ultrasound examination.

Doc. 57-1 at 3. The Secretary denied the appeal (log # 19-6-25650) in August

2019, stating the following:

> Appeal Denied.
>
> Your request for administrative remedy was received
> at the office and it was carefully evaluated. Records
> available to this office were also reviewed.
>
> In addition, the institution was contacted and they
> provided this office with information regarding the
> issues you presented.
>
> It is determined that the response made to you by Dr.
> Toledo on 6/25/19 appropriately addresses the issues
> you presented.

> Should you experience problems, sick call is available
> so that you may present your concerns to your health
> care staff.

Doc. 57-1 at 4.

Centurion suggests that these 2019 grievances were insufficient to exhaust Webster's administrative remedies because they were not filed within the timeframes outlined in FDOC's grievance procedure. It asserts that after Centurion treated Webster with DAAs in 2018, Webster waited a year to initiate and complete the administrative grievance process. Motion at 13. But "'[D]istrict courts may not enforce a prison's procedural rule to find lack of exhaustion after the prison itself declined to enforce the rule.'" Whatley v. Smith, 898 F.3d 1072, 1083 (11th Cir. 2018) (quoting Whatley I, 802 F.3d at 1215). When denying Webster's formal grievance and his grievance appeal, prison officials addressed Webster's allegations on the merits. Because prison officials declined to invoke procedural rules regarding time limits at each available step of the administrative process, especially the final step, prison officials waived a timeliness argument. Id. at 1084 (holding "that a prison waives its procedural objections to considering the merits of a grievance, and therefore waives its exhaustion defense, if it does not explicitly rely on the grievance's procedural shortcomings as an adequate and independent ground for denying the grievance at the administrative level"). In turn, Centurion is precluded from relying on a procedural timeliness argument to support its

exhaustion defense here. <u>See, e.g.</u>, <u>McClain v. Ferrer</u>, No. 3:17-cv-1022-J-34MCR, 2019 WL 2287954, at *7 (M.D. Fla. May 29, 2019) (finding the defendants cannot establish a failure to exhaust by pointing to alleged untimeliness of grievances because prison officials addressed merits of grievances).

Webster properly exhausted his claim against Centurion because he invoked one complete round of the FDOC's grievance procedures and received a merits-based response at each step. Prison officials did not treat Webster's grievances as untimely; therefore, this Court will not either. Thus, Centurion's exhaustion argument fails.

### (3) <u>Sufficiency of Webster's Eighth Amendment Claim</u>

Additionally, Centurion seeks dismissal of Webster's Eighth Amendment claim against it because it cannot be held liable based on respondeat superior or vicarious liability. Centurion Motion at 13-22. According to Centurion, Webster "(1) [] has not alleged the existence of a Centurion policy or custom, and (2) he has not – and cannot – allege that any Centurion policy or custom was the moving force behind any alleged constitutional violation." <u>Id.</u> at 16-17. Centurion argues that Defendant FDOC is responsible for the alleged cost-saving policy that caused any delay in treatment, and that Centurion cannot be liable for "abiding by the policies or customs of the government." <u>Id.</u> at 17-21. It also contends that Webster

suffered from cirrhosis before Centurion began providing health care, and that Webster fails to allege that his liver condition would have improved even if Centurion had provided DAA treatment sooner. Id. at 21-22.

"To establish an Eighth Amendment violation, a prisoner must satisfy both an objective and subjective inquiry regarding a prison official's conduct." Oliver v. Fuhrman, 739 F. App'x 968, 969 (11th Cir. 2018) (citing Chandler v. Crosby, 379 F.3d 1278, 1289 (11th Cir. 2004)). The Eleventh Circuit has explained:

> Under the objective component, a prisoner must allege a condition that is sufficiently serious to violate the Eighth Amendment. Id. The challenged condition must be extreme and must pose an unreasonable risk of serious damage to the prisoner's future health or safety. Id. The Eighth Amendment guarantees that prisoners are provided with a minimal civilized level of life's basic necessities. Id.

> Under the subjective component, a prisoner must allege that the prison official, at a minimum, acted with a state of mind that constituted deliberate indifference. Id. This means the prisoner must show that the prison officials: (1) had subjective knowledge of a risk of serious harm; (2) disregarded that risk; and (3) displayed conduct that is more than mere negligence. Farrow v. West, 320 F.3d 1235, 1245 (11th Cir. 2003).

Id. at 969-70. "To be cruel and unusual punishment, conduct that does not purport to be punishment at all must involve more than ordinary lack of due

care for the prisoner's interests or safety." <u>Whitley v. Albers</u>, 475 U.S. 312, 319 (1986).

As it relates to medical care, "[t]he Supreme Court has interpreted the Eighth Amendment to prohibit 'deliberate indifference to serious medical needs of prisoners.'" <u>Melton v. Abston</u>, 841 F.3d 1207, 1220 (11th Cir. 2016) (quoting <u>Estelle v. Gamble</u>, 429 U.S. 97, 102 (1976)). The Eleventh Circuit has explained that

> To prevail on a deliberate indifference claim, [a plaintiff] must show: "(1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." <u>Mann v. Taser Int'l, Inc.</u>, 588 F.3d 1291, 1306-07 (11th Cir.2009). To establish deliberate indifference, [a plaintiff] must prove "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than [gross] negligence." <u>Townsend v. Jefferson Cnty.</u>, 601 F.3d 1152, 1158 (11th Cir.2010) (alteration in original). The defendants must have been "aware of facts from which the inference could be drawn that a substantial risk of serious harm exist[ed]" and then actually draw that inference. <u>Farrow v. West</u>, 320 F.3d 1235, 1245 (11th Cir.2003) (quotation omitted).

<u>Easley v. Dep't of Corr.</u>, 590 F. App'x 860, 868 (11th Cir. 2014). "For medical treatment to rise to the level of a constitutional violation, the care must be 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.'" <u>Nimmons v. Aviles</u>, 409 F. App'x 295, 297 (11th Cir. 2011) (quoting <u>Harris v. Thigpen</u>, 941 F.2d 1495, 1505 (11th

Cir.1991)); see also Waldrop v. Evans, 871 F.2d 1030, 1033 (11th Cir. 1989) ("Grossly incompetent or inadequate care can constitute deliberate indifference, as can a doctor's decision to take an easier and less efficacious course of treatment" or fail to respond to a known medical problem).

Centurion does not dispute that HCV constitutes a serious medical need or that Webster suffered from HCV and continues to suffer from residual effects of the virus. Rather, it contends Webster fails to allege facts showing a causal connection between Centurion and its agents' failure or delay in providing adequate treatment. A municipality or other governmental entity may be held liable under § 1983 where that municipality's policies or customs cause a constitutional violation. City of Canton, Ohio v. Harris, 489 U.S. 378, 385 (1989); McDowell v. Brown, 392 F.3d 1283, 1289 (11th Cir. 2004). There must be "a direct causal link between a municipal policy or custom and the alleged constitutional deprivation." Harris, 489 U.S. at 385. Where, as here, a private entity contracts with a state or municipality to provide medical services to inmates, it becomes the functional equivalent of the state under § 1983. See Craig v. Floyd Cty., Ga., 643 F.3d 1306, 1310 (11th Cir. 2011); Buckner v. Toro, 116 F.3d 450, 452 (11th Cir. 1997). The plaintiff must prove that the agents of the private medical provider violated his constitutional rights, and its policy or custom was the "moving force behind" the deprivation. See Craig, 643 F.3d at 1310.

Viewing the facts in the light most favorable to Webster, as the Court must, the Court finds that Webster has plausibly pled an Eighth Amendment deliberate indifference claim against Centurion. Webster alleges that in May 2016, Centurion became the FDOC's contracted health care provider and is responsible for medical policy in Florida prisons and Webster's medical care. SAC at 9-10. He asserts that despite consistently complaining about his HCV related symptoms and requesting treatment, Centurion denied Webster DAA treatment until April 2018. Id. at 10. Webster maintains he was denied DAA treatment because "Centurion and FD[O]C had a policy, practice and custom of not providing [DAAs] to patients with HCV, in part to save costs and make larger profits." Id. According to Webster, because Centurion failed to treat his HCV sooner, "he sustained serious damage to his health and has an increased risk of future health complications." Id. at 11. Webster's allegations that Centurion has/had a cost-saving policy to deny treatment to HCV-positive inmates but failed to take corrective action present a plausible Eighth Amendment claim. Thus, Centurion's Motion is due to be denied.

In consideration of the foregoing, it is now

**ORDERED**:

1.     Defendant Corizon, LLC's Motion to Dismiss or for Summary Judgment (Doc. 32) is **DENIED**.

2.      Centurion of Florida, LLC's Motion to Dismiss and Incorporated Memorandum of Law (Doc. 36) is **DENIED**.

3.      Defendants Corizon and Centurion must file their answers to Webster's Second Amended Complaint **by December 23, 2021**. The Court will issue a separate order setting deadlines for discovery and the filing of dispositive motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 6th day of December, 2021.

**MARCIA MORALES HOWARD**
United States District Judge

Jax-7

C:      Frederick Webster, #856553
        Counsel of Record

28